The fifth case for the day, as by agreement of the parties, is being submitted on the briefs. That's Duro, Inc. v. Walton and others, Appeal No. 21-3025. And our final case of the day is Victor Gonzalez v. McHenry County, Illinois, 21-2756. We have Mr. Flaxman remotely. Good morning. And then Mr. Hoffman here in person. Mr. Flaxman, go ahead. Good morning, Your Honor, and may it please the Court. When Roger Gonzalez arrived at the McHenry County Jail in October of 2013, he was a sick person. He became even sicker in his time at the jail. I think we itemized six times when he had to be evacuated from the jail to a hospital each time, most times, for more than just an emergency room visit. He was held for two days, four days, two days, and then I think for two weeks. The jail responded to this man getting sicker and sicker and sicker by bringing the judge, a judge, to the hospital on September 2nd to allow Mr. Gonzalez to plead guilty and go to the Department of Corrections. He died in November of 2014. The claim in this case is that the jail had a policy of taking everyone who could not postpone and keeping them at the jail regardless of the problems, the medical problems they were having at the jail. The district judge rejected that policy, relying on the Eighth Amendment standard, which I think we all agree was incorrect. The district judge also said that we haven't alleged enough facts to show that there was a policy. And the defendants in this appeal say that's correct. We have to allege instances of other cases of other detainees at the jail who became more and more ill at the jail before we can show that there's a policy. Mr. Flaxman, Mr. Flaxman, I think I have a more fundamental question about the case here. As I understand it, this is not a, this is not a suit for failure to provide medical care, is it? No. And not against these defendants. I realize you had claims, Eighth Amendment claims against DOC and medical officials and Wexford and so on. But the suit that's left, the claims are against the current and former sheriff. And I guess my question is, what are they supposed to do? Their job is to maintain custody of the people that the courts send them and to take care of those people by providing them needed medical care. Well, the sheriff could have sent Mr. Gonzalez to another jail, which has better health care than his jail. His jail is a relatively small jail with, I think, 750 people. Other jails like Cook County have more than 10 times that many and have full-time doctors and and are better able to take care of seriously ill detainees. The sheriff could have sent, could have said, you know, I can't keep this guy here. He has to stay at the hospital. I'm going to send guards 24 hours a day to watch him while he's there, while he gets appropriate medical care. That's what other county jails do. That's what they did. That's what happened from time to time, right? You're familiar with the broad sweep of cases about medical care and custody, and we see, Lord knows, plenty of them. Usually, we say we want sheriffs to listen to doctors and to judges, and this case seems to suggest that there is some additional obligation to act contrary to the advice or directives of both. What's wrong with that? What's wrong is what's missing is that there's no indication that the sheriff asked the doctors to say, can this guy stay at the jail? The hospital doctors were distressed. I think we point out in that August 15th memo that this guy kept coming to the jail and kept getting tuned up and kept coming to the hospital. And he stayed there from that point until September 2nd, right? Then they could release him, and then he goes back to the jail and gets ill again and declines and has to come back to the hospital again. There's no indication that the sheriff ever inquired as to why is this guy going to the hospital every month or every two months to be tuned up. What's wrong with him? Mr. Flaxman, is there any indication as to what Sheriff Nygren knew? You indicated there was no indication that he reached out on this issue. Is there any information about what Sheriff Nygren knew about this plaintiff? There is none. This was dismissed on the pleadings. It would be plausible to say that the sheriff of a small jail knows when somebody is as sick as Mr. Gonzalez and is sent out five or six times or seven times to a hospital for emergency treatment. That this gets called up the chain of command and say, we have a problem. We have to watch this guy. He's going to die on our watch, and we don't want him dying at the jail. And they avoided that problem by just sending him to IDOC where he could die, where being a more, not as unusual an occurrence as it would be at the jail. But this was dismissed at the pleading stage without any development of the facts about the McHenry County defendants. Let's ask a similar question to the other defendants then. There were settlements with these other defendants that were once in the case. Was that also at the pleading stage or was that after some discovery? That was after extensive discovery and experts and lots of work. The issues with the other defendants, Dr. DeVita at the IDOC sent Mr. Gonzalez out to the University of Illinois where he stayed for a month getting assessed. And then he said it was okay to send Mr. Gonzalez by bus, by an eight-hour bus ride or van ride to another prison. And when Mr. Gonzalez arrived there, the warden said, we've got to send this guy to the hospital. There's something, he's seriously ill. His testicles, I think, were the size of a grapefruit. He was in need of a hospital. He went to the hospital. The doctor at the hospital said, oh, we could send him back to the prison. And there was a doctor at the hospital and Dr. DeVita who were, we alleged, the settlements were with those doctors for the way they treated Mr. Gonzalez when he was there. But Mr. Gonzalez was basically executed or died in the jail or he sat on the road to die with his treatment at the jail. That's what we expect the evidence would show if we get past the motion to dismiss. Where was he when he died? I'm sorry. Go ahead, Judge Manion. Where was he when he died? He died in Robinson Correctional Center in southern Illinois. He was in prison at the time. He wasn't at a hospital someplace. No, he was sent out to the hospital and he died en route to the hospital. He died en route to the hospital. Right, from the prison. The hospital kept him for a couple hours, sent him to the prison. He got worse and then he died en route. I think he died, the first hospital sent him to a second hospital and then he coded en route to the second hospital. He was a sick man when he entered, but he became even more sick when he was there. And on this record, it could have been that there was something in the water that was causing harm to him. We don't know. It was the doctors not paying attention. It could have been something in the environment. But the sheriff should have paid attention to why this guy is going to the hospital every month or every two months. Yeah, I'm going to insert one other thing. I think you were a lawyer when I first became a judge. That goes way back. That's correct. Okay. Anyway, well, it's nice to see you again. It's nice that we're both here. Lots of veterans. All right. Thank you very much, Mr. Flaxman. Mr. Hoffman, if you want to save the rest of your time for rebuttal, I'm assuming, Mr. Flaxman. Yes, Your Honor. Thank you. Sorry, I didn't mean to jump the gun there. Mr. Hoffman for the sheriffs. Good morning, Your Honors. Counsel. Another veteran. May it please the court. If you'd like to remove your mask, you may. You don't need to. I think I do. I tend to be criticized for having a soft voice, and I know that was a problem with one of the earlier speakers. Thank you. Mr. Counsel for the deceased says that Mr. Gonzalez was sick when he went to the jail, and he got sicker. What he doesn't allege is that anything the jail did or didn't do caused him to get sicker. At the end of his opening, he speculated, well, maybe there was something in the water. Every case that we've looked at and every case that the plaintiff cites in support of his generalized policy, and I say generalized because it's just the policy, and I want to read it, what the plaintiff alleges. Quote, the official policy of the jail was to accept custody of all persons charged with crimes who could not postpone or otherwise secure a pretrial release without regard to the inability of the jail to accommodate that person's serious medical needs. Every time Mr. Gonzalez had a serious incident at the jail, he was found unresponsive on several occasions. He fell once and injured his hip. Every time the jail sent him right to the hospital for emergency treatment, I can't think of anything more appropriate for the jail to do than to seek emergency relief for a detainee who's having a serious medical incident. There are no allegations that the jail ever told the hospital, well, fix him up real fast and bring him back. We want him. He stayed for periods of, according to the complaint, from one day to a little over two weeks, and that little over two weeks period was the final period, and as soon as he had pleaded guilty and was sentenced, he was transferred down to IDOC. There's nothing in the complaint that says that the jail did anything improper to either deny him medical, Mr. Gonzalez's medical care, to provide inappropriate medical care, or not to provide timely medical care. Mr. Hoffman, a question that goes to the sequence of the pleadings. Yes. If all of these defendants were alleged to have engaged in conduct that deprived Mr. Gonzalez of constitutional rights, that all occurred at a similar time, discovery ensued, discovery went at different paces with regard to different defendants. Is that a fair characterization? I don't remember. This complaint was amended, I think, eight times before it was finally resolved. In the second amended complaint, we filed our motion to dismiss. Counsel was in the process of continuing to add defendants. When the case was first filed, it was just against the McHenry County defendants. There was no discovery that we were involved in. We were dismissed in September, I think, of 2017, and I don't believe most of the other defendants, the IDOC defendants, had been joined at that point, and some of them had filed motions to dismiss also. So, no, there was not a lot of discovery that occurred that I'm aware of, although we had, right after the case was filed, we had provided to Mr. Gonzalez's first attorney the jail's file and medical records on Mr. Gonzalez before we were asked. He asked me for them. There was no reason not to provide them because he was going to get them. Given the generality of the policy that Mr. Gonzalez alleges, what condition or conditions are sufficient to allege a failure to accommodate? We have to guess. Yes, Mr. Gonzalez had a series of serious medical conditions, but does that mean somebody coming in with two or three of those also can't be provided for at the jail? And again, the record, the allegations of complaint show he was provided adequate medical care. The sheriff is not a guarantor that a sick person will not get sicker while he's in custody. Would you agree the sheriff's job is to comply with court orders committing people to his custody? Absolutely. The plaintiff argues in his brief that, well, the sheriff could just release him. Well, no he can't. Mr. Gonzalez was in jail pursuant to court order. Then he alleges, well, he could have advocated with the state's attorney to seek Mr. Gonzalez's relief. Well, that's not the sheriff's job either. That's Mr. Gonzalez's attorney's job to advocate to the court. While plaintiff is correct that pleading under federal rules is notice pleading, it doesn't require the kind of specificity, for example, that fact pleading in Illinois requires. But as the court in Iqbal said, quote, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but not shown that the pleader is entitled to relief. And in that, in Iqbal, the court found insufficient the allegation that the, quote, defendants approved a policy of arresting and detaining Arab Muslim men, close quote. I think that comes pretty close to what plaintiffs have alleged here. There's some undefined duty to accommodate, no allegations of any inappropriate treatment. I think it's noteworthy the plaintiff didn't sue the jail's medical staff, didn't sue any of the jail's corrections officers, didn't sue the hospital or the doctors who treated him while he was in custody in McHenry County Jail. The court asked, you know, well, if he was too sick, what should the sheriff do? And counsel suggested he should be sent to a jail that could provide better medical care. At the same time, in his brief, he affirmatively states this is not a case about medical care or medical judgment. So I'm not quite sure what it's a case about. Could have asked them to keep him in the hospital, asked the hospital to keep him in the hospital. But there's no allegation that the sheriff ever interceded with the hospital to do anything. That's not his job. Sheriffs are entitled to rely on the medical judgment of medical professionals. When they discharged him back to the hospital, it was reasonable for the sheriff to conclude that he was fit to be back in jail. As to the size of the jail and whether the sheriff knew about Mr. Gonzalez, he may have. The jail is, I think, around 650 capacity. But that's on any one day. Throughout the course of Mr. Gonzalez's tenure, there would have been thousands of detainees who passed through the jail who, within a day or so, posted a bond or otherwise were allowed out on bail or on their own recognizance. And your statement of may or may not have known about Mr. Gonzalez, that's not based on record because there's no record evidence. Exactly. And it's not alleged in the complaint that he knew, just as counsel argued that he must have known. It seems to me that plaintiff's theory here is something very close to strict liability or maybe akin to raise its locator. The decedent had serious medical conditions. He was put in jail. He had had a number of serious medical incidents, a fall and being found unconscious that required his hospitalization. Ergo, the jail's liable. What about the detainee who comes in with a heart condition and suffers a heart attack? He's taken to the jail immediately and recovers. Should the sheriff then say, I can't take this guy back because he has a serious medical condition that needed to be treated in a hospital? Quickly, on the issue of qualified immunity, counsel did not raise that in his opening brief. We argued it in the district court and in our response brief. Plaintiff has not cited any case. The one case he cites, and I won't try to recapitulate it at this point, the Woodward case, had a whole lot of allegations of inappropriate medical treatment in it. It was not a case that put the sheriff on notice, as plaintiff argues in his reply brief. That case would not put the plaintiff on notice that a detainee with serious medical conditions who has to be hospitalized on occasions knew that he should not take that detainee in. Are you aware of any case authority that would require a custodial official in a jail or prison to refuse to take custody as ordered by a court? I'm not aware of any such. I mean, have to provide medical care, of course. Exactly, and other conditions. Plaintiff, literally briefly in his brief, to a safe environment, cited cases about not providing sufficient water or having unsanitary and filthy conditions or overcrowding. None of those things were alleged here. Thank you, Mr. Hoffman. Thank you. All right. Now, Mr. Flaxman, rebuttal? I'd just like to leave the court with one thought. What if the sheriff said to the court, to the state court, I cannot accept any prisoners who need oxygen because we can't give oxygen here? Would that be lawful? What if the sheriff said to the state court, we are overcrowded. We cannot take one more prisoner without it being unsafe, we just can't take any more prisoners. Would that be improper for the sheriff to do? The answer would be no in both cases. The sheriff has a duty to provide a safe environment. And in this case, it required, on these pleadings, medical care better than what he was getting. Thank you. All right. Our thanks to both counsel. The case is taken under advisement.